19-5285 Stand Up For California et al. Appellants v. United States Department of the Interior et al. Ms. McClain, for the appellants. Mr. Toth, for the Appellees Department of Interior et al. Ms. Ellsworth, for the Appellee Wilton Rancheria, California. All right. Ms. McClain. Thank you, Your Honor. Good morning. May it stand up for California, Patty Johnson, Joe Teixeira, and Lynn Wheat. This case involves a trust decision that was made by an unauthorized federal official without meaningful public review for Indians that are ineligible for trust land hours before the inauguration in 2017. In 2013, the Wilton Rancheria applied to have 282 acres of land in Galt acquired in trust for a department in the public reviewed that application for three years. Two weeks after the 2016 election, however, the principal deputy assistant secretary, Larry Roberts, asked the state, local governments, and a few... Can I just ask, you're presenting this as if this is a one administration did something on its way out, but in fact, the succeeding administration certainly indicated that it had no problem with that. I appreciate the issue of whether it's ratified or not, but Trump administration, including its deputy secretary, to the extent that he could, tried to retroactively ratify this. So this is not, in tone anyway, this is not a case of one administration slipping something in as it's leaving. Isn't that right? Well, no, Your Honor. I guess I would disagree that it was a case where one administration was ratified and the next administration said it was ratifying. Now, whether- So, Your Honor, if the next administration, as an initial matter, the documents that the government has referred to are not part of the administrative record. I'm assuming that they are. They're public, they're legal documents ratifying for purposes of... I'm going to use the word ratifying. Isn't the next administration... And the next administration is defending this. So this doesn't seem like it's something that this is a dispute between administrations. Maybe I'm wrong. I'll ask the Justice Department. Oh, I don't mean to suggest- But it seems like they are. I'm sorry, Your Honor. I didn't mean to suggest there's a dispute between the administrations. My point is that, first of all, with respect to those documents, the February 10th document doesn't say anything about ratifying the principal deputy's decision. I understand the words ratifying, and I didn't mean... I know you have a dispute about that, but I just wanted to be clear that this is not a dispute between two administrations. No, I don't mean to suggest it's a dispute between two administrations. Go ahead with the argument. Go ahead. Just another limited detail. You did say that they were outside the record, but if we're referring to the Connor memo and the Black decisions, those were exhibits in the district court. They're in the joint appendix. For purposes of our preliminary... We had preliminary dispositive summary judgment motions in which we attach those documents after having gotten them from the Department of Justice for our request. We did ask to have those documents and the administrative record associated with those documents produced. The government opposed that and said that because the January 19th decision was final in its space, there was no reason to produce an administrative record for anything that came after January 19th. They were successful in that, and there's been no administrative record produced for anything that occurred after January 19th. That really goes to this question of finality versus availability of further administrative action? Well, yes, Your Honor. The government has taken the position... The department originally took the position that the decision was final on January 19th because the principal deputy was exercising the authority of the assistant secretary. The department's position is that the regulations, which only allow the secretary and the assistant secretary to issue final trust decisions, doesn't preclude the principal deputy from issuing final trust decisions. That is the position they've maintained in the litigation, and it is also the position that they set forth in the July 10th memorandum. However, since then, it appears now that the department is largely relying on this ratification notion, both for the O'Connor memo, which also does not appear in the administrative record, and through the February 10th and July 13th memos as well. Okay. Just limited to the memo of Deputy Secretary Connor, if I'm understanding it correctly, their view is... Well, first, your view is that 25 CFR 151-12C, by naming the secretary and the assistant secretary under the reasoning, a kind of expressio unius per Giordano, prevents any other delegation. That is our position. In 2013, the department revised the Part 151 trust regulations to establish that the secretary and the assistant secretary have the authority to issue final trust decisions that's in 151-12C, and that the BIA officials have the authority to issue non-final trust decisions. Right. But their position is that it's not so limited, that delegation is presumptively permissible, relying on international telecom. If we were to agree that this is more like international telecom than like Giordano, in the sense that in Giordano, for a wiretap, it's very strongly, very narrowly controlled, but this is not that kind of decision. It's more like presumptively delegable. Then your position there is... Well, I think, Your Honor, the first question is, is the regulation clear on its face? And the Supreme Court advised in Kaiser that you use traditional methods of statutory interpretation, interpreting regulations... Right. But I was just, by hypothesis, taking on that and saying, if we don't think the negative inference on the face of the of the regulation, without it saying only or exclusively these two offices, that assuming that there is some permissible delegation, then the question is, was a delegation permissible for this agency and or was a delegation made in this instance? I think that we have, and I want to make sure I'm responding to each of your questions. So we don't believe that there was a legally, there was a legal delegation at all to the principle. Right. So putting aside your language of the regulation, putting aside that argument just for purposes of parsing the steps, the next step in their argument is that under the department manual, in the absence of the assistant secretary, the principal deputy assistant secretary can authorize a delegated authority. And your response to that is... Is that the manual is specific about when the principal deputy can exercise that authority and has to be in the absence of the assistant secretary. Whereas here, the position is vacant and you say those are two different things. They are two different things. And the government responds that that argument was not, that particular argument about the difference between the word absent and vacant was not raised in the district court and was forfeited. And I followed that. And I wonder what your best site is for where you think it was preserved. Well, your honor, we had, it's, I think the clearest statement of it was during oral argument. It was not clear during the proceedings that the United States, our argument had focused on 151.12 in the plain meaning. And that was the response of what the federal government and the tribe responded to. During the proceedings before the court, when it became clear that there was confusion about the word vacancy versus absence within the department manual, we addressed that directly during oral argument. But our position has been throughout that manual provisions 8.1 and 8.4 are not sufficient to grant the principal deputy authority to issue this decision. Right. I understand that's your, that's your principal argument. And the ratification by Secretary Conner saying, oh gosh, we, you know, we meant to say, Larry, what's his name again? Roberts. And we gave him the wrong title, but we mean Roberts and here's his correct title. That is Deputy Secretary Conner. Memorandum is not a legally, not a legally appropriate delegation under the department manuals. The deputy secretary has to follow certain procedures in order to delegate the authority of the secretary. Those procedures include publishing the delegation in a department manual release, having the secretary's approval on the delegation and identifying specific authority under which that delegation is taking place. And the Conner memorandum does none of those things. Apart from that, the Conner memorandum was issued prior to the trust decision on January 19th. During oral argument, the department of justice represented that it had been issued earlier. So there's no basis certainly to claim the Conner memorandum ratified. It could be ratifying the delegation as opposed to the decision, which in some sense is actually stronger for them as opposed to weaker, because it's saying, we really mean you Roberts to be empowered in this category of actions. And then Roberts takes an action. I would say that the department, the deputy secretary is still obligated to follow the procedures that are set forth in the department in the manual. Now their response, the tribe says, and it's brief at 38 to 39. These are kinds of internal formalities that are really up to the agency. And yeah, maybe they didn't adhere to them, but there's no private action on that. That doesn't, it certainly doesn't render the outcome illegal in any way. That violates appointments clause or, or law or regulation. So, you know, just, it's just not something that we as a court could pass on and your best response to that is Well, we would come back to the plain language of the regulation, of course. But apart from that, the delegations are important because they're a way of ensuring that the decision makers are those delegations take place in a manner that's inconsistent with the manual, the public can have no idea how they've been granted that authority from whom whether that that authority was valid and it leaves everyone uncertain as to whether a decision, for example, is final or non final. And if we had assumed, for example, that the principal deputies decision was final. But if you look at 25 CFR point to section 2.4 it says that the IBA has the power to hear appeals from any deputies decision, we could have missed the deadline for filing administrative appeal and then our rights to ever challenge decision will be lost. There is Although didn't you seek to file an administrative appeal and then it was clarified then that Actually, this was somebody acting as Assistant Secretary and therefore I mean, isn't that what happened. That's not we we actually reached out to the To the department after the decision was issued and asked Under what basis. They were claiming that this decision which was signed by the principal deputy not by the Assistant Secretary. How that was final we received no answer. At a certain point, we concluded that it was necessary for us to file an appeal to preserve our rights. So we filed an appeal before the IBA the Interior Board of Indian Appeals, the board, then asked the parties asked the parties to brief whether they believed that the decision was final or non final at that time, the acting Assistant Secretary Indian Affairs, Michael Black, who is acting pursuant to a delegation of authority from the acting Secretary assumed jurisdiction over the appeal pursuant to Section 2.20 at which point We waited until the department ultimately issued until black ultimately issue decision July 13 saying that the January 19 decision was final. And I assume you you also filed a protective Would that did you do something to kind of like protect Your rights in the interim or you just relied on that decision as the The July 13 decision as kind of starting the clock, as opposed to January 19 starting the clock to file an action in district quarter or did it matter for your kind of statute limitations purposes. No. Well, your honor, what we did was we went to the district court and saw a temporary injunction or TRO prior to the decision being issued when it became clear based on the timeline and the abbreviated comment period or comments for the NEPA review. We asked that we asked the court to enjoin not the decision itself, but the transfer of land into trust based on that decision. At that point, that was, I believe, on January. 10 at the department represented to the court that I did not know whether a decision would forthcoming or what that decision would look like on that basis. And for other reasons, the district court denied the relief that we thought We then filed a 70 request under 705 the APA asking the department, whether it would stay the effect of his decision, namely not transfer title to land and trust. Until we had the opportunity to return to court. Once the final decision had been made. That decision was pending and the department then acquired the land in trust transferred the land and trust on February 10 before we could go back to the court and seek relief. Because they had not yet to nine or seven or five requests. So we already had an action pending in court at that time. The session limitations that applies actually with respect to challenging a trust decision is six years. So there wasn't a timing issue for us to go to court, but we had tried many in many different ways to try to to stay the effect of the decision prior to July 13 just so that I can understand your position with respect to the presumption of delegate ability. You believe that it does not apply to regulations. As the same way that it applies to statutes. Right. That's your first position. Well, I think that this courts never squarely address the issue and that the the rationale for the presumption of regularity has less force in the context of agencies, because when Congress passes statutes. It's not going to take the time in most cases to identify specifically who will be responsible for implementing what so the presumption of delegate ability makes a lot of sense when you're looking at statutes within the agency after an particularly after an agency has promulgated a rule. There's far less reason for that presumption to apply. And in this case, there's no reason for that presumption to apply because the rule specifically identifies and delegates to certain agency officials who has the power to make a final trust decision and who has the power to to make non final trust decisions. So there's no basis for applying a presumption of context. Now courts have applied the presumption of delegate ability to statutes. Even I guess without respect to whether the statute was ambiguous. Right. The statute, the courts haven't said, well, if the statute we think is is, generally speaking, clear and unambiguous, then there will be no presumption of delegate ability that hasn't been how that's worked, has it? No, no, of course, not been that. So but you're saying that we should do that with respect to this regulation, because this regulation is clear and unambiguous. Well, when a regulation specifically identifies the individuals that have the authority to make certain types of decisions, there's no longer. The agency has already done the work for you. There's no reason to apply a presumption when the agency is specifically identified who is going to be responsible for what types of decisions. Applying the presumption of regularity in this context actually can undermine or negate the the rulemaking process in a specific as he was in this particular case where the preamble to the rule makes clear that its purpose is to delegate to two officials and two officials, you know, only identified in their final trust decision making authority applying a presumption undoes what the secretary. Well, that's sort of that. That seems to me an argument that the secretary can make that. I'm not sure that you have a standing. I don't mean in the constitutional sense, but the secretary here apparently doesn't agree with that point. The secretary doesn't believe that the secretary has been undermined by this. Of course, if the secretary were taking the position that the previous administration had undermined the secretary's authority, or some underling in his own administration had had done that, there would be an argument. But I don't really see that you're in the place of claiming that applying the presumption in this case undermines the secretary of a secretary's authority when the secretary doesn't think that. The department may defend a decision that is made, but that doesn't necessarily reflect what the language of the regulation requires. I understand that argument. Let me ask you, is there anybody else on the panel who has further questions? Not at this time. Okay, great. We'll give you a chance for a bottle at the end. Thank you. All right. And now we'll hear from Mr. Toth, correct? Good morning, your honors. Please, the court. Brian Toth for the defense. Oh, I'm sorry. This is one in among a number of cases that have been brought by the same plaintiff, including in this court, challenging the Department of Interior decisions to acquire land and trust for often, like the Wilton Rancheria, previously landless Indian tribes in California, who were unlawfully terminated half a century ago, and restored to federal recognition through a settlement. I got to focus, as my friend on the other side did, largely on the delegation issues, but I just want to mention, I think the California Rancheria Act claim and the NEPA claims are fairly covered by the case law from this court. In particular, the North Fork decision, I think, controls the case as to the California Rancheria Act claim. And on NEPA, I think looking at the Supreme Court's decision in March, provides the rule of reason that is flexible enough to accommodate the type of procedural path that happened here under NEPA. So turning to the delegation issues, the district court correctly held both that the regulation did not restrict re-delegation authority, and also that there was a re-delegation fact in this case. Now, on the first issue, whether the regulation is exclusive, the issue comes down to, I think, four main factors. Looking at the presumption, the plain text, the purpose of the regulation, and Interior's past statement as well. All of these factors considered together, weigh in favor of concluding that the regulation does not restrict the assistant secretary in acquiring land into trust or prevent re-delegation. I'm trying to understand your argument. When you say, when we try to determine whether a function is exclusive, do you mean that in the same way that the Federal Vacancies Reform Act uses the term exclusive or non-exclusive? Yes. That's how this case, the arguments on appeal based on the regulation, that's how they fit with the Vacancies Reform Act. It's not disputed that this decision was made during a period where there was nobody who was an acting official for the assistant secretary. So that office was not occupied. Nevertheless, the Vacancies Reform Act permits, it's silent on, because it essentially carves out those responsibilities that are not required by statute or regulation to be exercised by, in this case, the secretary or assistant secretary, and only by those officials. Well, what do we do here where the definition of secretary in the regulations is secretary or authorized representative, I think it is, and then you have the regulation here, section 151.12, I think it is, that identifies the secretary and the authorized representative of the secretary who have the authority to make final trust decisions. Why should we presume that it would go any further than that, based on that plain language? I believe that you can read the definition of secretary in 151.2, I think it is, as a redundancy. In light of the purpose of, and the text of 151.12, if you look at the overall structure of 151.12, well, let's just take the text. First of all, it doesn't expressly restrict re-delegability by the assistant secretary. The argument that I believe your honor is referring to is based on a canon against construing the regulations to avoid surplusage. That's a way of looking at the silence and trying to figure out what the silence in 151.12 means. But I would submit that a fair reading of the regulation and looking also at the purpose of the regulation, not only does the regulation not include any express restriction, but the amendments that led to this 151.12 in 2013, they were in response to an entirely different issue than re-delegation. They were undertaken largely in response to the Supreme Court's decision in Patchak, which held contrary to the government's longstanding view that land and trust decisions were judicially reviewable under the APA. The prior regulation had included a 30-day waiting period to accommodate litigants who wanted to challenge those consistent with the government's previous position that there was no judicial review once the land was acquired in trust. There was no longer any need for that 30-day waiting period. So that was the motivation from promulgating those regulations. At the same time, the regulations seek to inform challengers what paths they have for administrative review and how they can get to court. The regulations imposed expressly an exhaustion requirement. So yes, I would agree with my friend on the other side that it's important for them to know what their administrative appeal rights and avenues are. And the regulations do talk about two general paths in the decision-making, one by the secretary, one by the assistant secretary. But where there is no assistant secretary and nobody who is acting for that person, I think the regulation accommodates re-delegation. It certainly doesn't restrict it. Well, it accommodates re-delegation in 151.12d, certainly. But why shouldn't we read all of that to mean if it's re-delegated further, then that's construed as being re-delegated to a BIA official and that's non-final. I mean, that makes all of this harmonious, right? So if I'm following you, in this case, Mr. Roberts was not, in fact, a BIA official. I apologize if I'm misunderstanding the thrust of your question here, but he was a principal deputy assistant secretary in the office of the assistant secretary. Right. Let me just interject there. One of the things that the challengers here raise is that the regulations expressly say that a principal deputy's decision qua principal deputy, meaning not if he's acting as the assistant secretary, but when he's principal deputy, that also may be appealed to the board under 2.20c. So I think part of the difficulty here in which route has been taken, the administratively appealable route or the final route, is that this decision was signed by Roberts and doesn't say that he's doing it in his role acting as the assistant secretary. Is that the case? I think the best response to that, I'm not recalling the signature block on the actual decision by Mr. Roberts, but I would point the court to 2457. It's the federal register notice for the notice of availability of the final EIS. There, Mr. Roberts, above his signature, he says this notice is in the exercise of the authority delegated to the assistant secretary, Indian Affairs, by a department manual provision he cites. Which column are you in? Wait. I don't have the page in front of me. It's at the very end, the last paragraph. Oh, yeah. Signature. Okay, yeah. So the signature itself, he says principal deputy assistant secretary, but a couple sentences above that, it says is in the exercise of authority delegated to the assistant secretary, Indian Affairs, by a department manual provision he cites. And I'm not recalling the signature block on the actual decision by Mr. Roberts, but I would point  the actual decision by Mr. Roberts, but I would point the court to 2457. I don't think in this case that the plaintiffs were actually deprived of any administrative review. They sought an also in a lengthy written decision with the reasoning that we're defending here. So, you know, I think if they're making the case that there was confusion, or that they were deprived of some procedural right, they weren't. They attempted to exhaust their administrative appeals. They did it protectively. Turns out the department believed they were wrong and dismissed the appeals, but they still went to court. They were not out of time. They were challenging this, as my friend says, even before the decision was made, they were seeking a TRO. So, can the department re-delegate the authority to a BIA official and have them standing in the shoes of the assistant secretary and make a final decision for the agency? A BIA official who would be delegated the authorities of the assistant secretary? Yes. That's a good question. I don't know the answer to that. I believe that they could. And I think the reason why is this reorganization plan number three of 1950 at JA 2689. It was confirmed by Congress in a public law in 1984. It provides that the secretary of the interior may make such such provisions as he shall deem appropriate, authorizing the performance by any other officer or by any agency or employee of the department of any function of the secretary. I mean, that's maybe four uses of the term any, three or four. It's fairly broad, barely encompassing. So, you believe that someone who's not an officer of the United States can make a final decision taking land into trust and depriving states of rights and authority and power on behalf of the United States and that raises no constitutional problems? I don't believe it raises constitutional problems. This is something I have looked at preparing for the argument, but we didn't quite brief this this way. I mean, what we said in the brief is that the constitutional issues require some sort of supervision for the person to be an inferior officer, but we didn't brief the question of whether someone temporarily exercising delegated responsibilities of an officer must be an officer. And if, you know, I'd be happy to provide supplemental briefing on that. I think that's another way of looking at this because the path, Judge Wilkinson, you're describing the second path to decision-making under 151.12d by a BIA official normally leads to an appeal to the Board of Indian Appeals, which is made up of individuals who are not, they're not Senate-confirmed, certainly, and they've recently been appointed by the secretary. But I think what the plaintiffs are arguing for here is that they're entitled to some Senate-confirmed decision-maker, which they clearly are not. And I don't believe that there, although we didn't brief it, I'd be happy to provide briefing on the question if ordered, I don't believe that even an officer is required to be a constitutional officer to temporarily step in and be delegated the responsibilities of an officer of the United States as doing anything other than undermining the Federal Vacancies Reform Act. Because if we basically say that pretty much any obligation of a Senate-confirmed official is non-exclusive because the agency can re-delegate it and there's a presumption that they can do so, then the Federal Vacancies Reform Act is essentially a dead letter. Because even if, as in this case, the time period passes, the agency doesn't matter. The agency can still function and just make the person who Congress said couldn't be the acting official anymore, just continue to be the acting official because they're just going to delegate the authority to them. Why isn't that problematic? Because they still cannot exercise the authorities that Congress makes exclusive to the official who's no longer occupying the office. And if Congress wants to change those or only a certain employee may exercise authority, it's free to do so. But for 20 years, under the Office of Legal Counsel has taken the view that because the Vacancies Reform Act does not cover, it defines out, if you will, the non-exclusive responsibilities, not only ones that are not exclusive by statute, but also like here, ones that are not exclusive by regulation. It's simply silent. It simply does not restrict the government's ability to continue to perform those functions through re-delegation. So you think that the only way that something can be deemed exclusive is if Congress explicitly says so? Or if there is a regulation that makes that clear, and I think doing so explicitly would be the easiest way to do that. And we'd submit that this is not the type of regulation here. So the agencies, the executive gets to decide when something is exclusive by how they write their regulations, and they can just write the regulation to make everything non-exclusive. That's the way you think this works? They couldn't if there were a statute that made the responsibility exclusive. And to do that, a statute, as we know from Giordano, doesn't have to include express language. But there does have to be a compelling purpose behind the statute to limit re-delegation. And while we think this regulation here, I mean, we think the same types of statutory principles can easily be applied to interpreting this regulation, but we don't think that there is a compelling purpose behind this regulation of restricting re-delegation. Certainly, it provides information about two general paths to ordinary decision-making and the appellate rights and consequences for judicial review that follow in exhaustion, but that is not a restriction on re-delegation, and we would ask the court not to read this. I have a question about Doolin and our case law about ratification. My reading of Doolin is that an officer can kind of ratify an act that was previously taken, so long as the officer at the time of the ratification has the authority to take the act, to perform the act him or herself, but also that the officer at the time that the decision was made, looking backwards, would have had the authority to have stood in the shoes of the actual decision maker and perform the act. Is that understanding of Doolin correct? I believe so, and I think Doolin was reiterating basic principles of ratification under contract law and such, so I would agree with that, and I believe that, I'm sorry. So, let's just take the Conner memorandum. So, could Conner under Doolin ratify the action of Roberts? Yes, because as the deputy secretary, his office was, in fact, superior to the assistant secretary, Indian Affairs, and moreover, he acts with the full authority of the secretary under the department manual provisions. But what about deregulation? The regulation doesn't say, 151.12 doesn't say the secretary or the deputy secretary or the assistant secretary for Indian Affairs. It just says the secretary or the assistant secretary for Indian Affairs. Right. No, I understand, and secretary, I mean, we talked about this a little bit at the beginning, being defined as or authorized representative, we'd have to argue that under the regulation, he was another authorized representative. And, but the deputy secretary did not purport to ratify any of Roberts's actions, right? You're not arguing that this was an actual ratification here. He confirmed, so looking at the memo at 276 of the joint appendix, um, he confirms the delegated authority that Mr. Roberts had, and he says, to the extent it is determined you lack such authority, I hereby ratify and approve any actions you've taken. Our trial counsel stipulated or made a proffer based on non-record facts that we stand by during the trial proceedings that the decision being challenged here came later in the day, on the same day than the Connor Memorandum. I would have never known, but for that proffer, we stand by it, but we don't think it matters because, um, this is demonstrating the evidence that, that the department intended to vest Mr. Roberts with the full authority, the delegated authority of the assistant secretary. And I guess I'm also trying to understand exactly the government's point of view here. How are documents that you are insisting are not part of the administrative record, documents that we should rely upon at all? So, to be clear, Judge Pillard was correct in, in identifying them as, although not part of the administrative record we produced, part of the record on summary judgment that was properly before the district court, and it's properly in the joint appendix, uh, for, for this court, but as far as them not being in the administrative record, these are documents that we're, um, relying on to cure an alleged deficiency in delegation. And as such, I think, you know, Doolan in footnote 11 rejects, um, the argument against ratification, that ratification is somehow a post hoc rationalization, saying that, well, ratification just simply cures the alleged deficiency. If there's a deficiency, court doesn't need to determine that, but it's not providing a different basis for the agency's decision, which is really the point of the administrative record rule to avoid the types of concerns about post hoc rationalizations. So that's, I realize that's a lengthy answer, but I don't believe that the fact that it's not in the administrative record prevents us from relying on the document as a matter of, uh, say harmless error or curative arguments. Thank you. All right. We'll hear from Ms. Ellsworth. Good morning, your honors, Jessica Ellsworth on behalf of Wilton Rancheria. Picking up on your question, Judge Wilkins, about the documents, um, that counsel for the other side said were not part of the administrative record. I think it's important to understand how this case developed in the district court, which is that the plaintiffs moved for summary judgment on this claim of non-final decision before there was an administrative record. They moved for this and said their, um, claim did not depend on administrative record and was independent of, didn't need to wait for, should be resolved before any administrative record was produced. All three of the documents, the two decisions by Mr. Black and the decision, the Connor memorandum, um, were included by the plaintiffs in the summary judgment briefing. They are what was before the district court when Judge McFadden had to decide if this was a final decision. So, so whether or not they were in the later produced administrative record to resolve different claims is really irrelevant to this question about whether they are properly considered on the claim for which they were submitted when the district court, um, looked at them. Uh, secondly, I heard standups council tell Judge Pillar, that one of the problems is that people won't know if a decision is final, if a delegation is permitted beyond the ISIA. That's not true for a number of reasons. And I think standup's own conduct here shows, um, that they knew the decision here was, was final. It said on its face that it was final. Um, and if a decision is not final, the regulation specifies that it has to be accompanied by information about how to administratively exhaust. So if that information isn't provided, then the, the time for filing an administrative appeal doesn't start running. Um, and there are certain notice provisions. That's, that's really what 151.12, um, was designed to do when it was promulgated in 2013 was provide some additional clarity to parties about these two paths, um, for trust decisions that are in fact the same two paths that interior uses for all of its other decisions. I think that's, that's critical to understand when looking at this delegation issue. But if, but if, if a, if a decision doesn't say by the author, I am signing this under authority delegated to me as the Assistant Secretary for Indian Affairs, as if I am the Assistant Secretary, then how is a party at that time going to know that that decision is not final? I'm sorry, is final as opposed to a decision that falls within 1 51 12 d. So your honor, I think the prince, one of the principal reasons is if you look at 1 51.12 c two I I I it includes information that has to be done for a final decision when it approves a request and that what it requires to be done is that the land is immediately acquired into trust on the date on or after the date the decision is issued. And this decision specifically directs that the land be immediately acquired into trust that I understand that they acted as if it was final, but whether, you know, just because a party acts as if they're complying with the law doesn't really control whether they really are. If if the regulation says that the only person who can make this decision is the secretary or the Assistant Secretary for Indian Affairs, and the person who who makes the decision doesn't purport to be either one of those. So your honor, two responses to that. The first is that I think the mango case from the Second Circuit and the ethic on and no case from the Federal Circuit are very helpful in understanding that the mention of a particular individual is not an exclusion of delegation to others. And I would suggest that those courts and the way that they distinguish Giordano is very useful for this case. The other decision, there's a Crawford Hall decision from the Central District of California, looking at a different sub delegation by the ASA in which the court reaches a different conclusion about that provision, but spends pages explaining why the sub delegation here was properly done. And it goes through a number of factors, including this presumption that you were discussing with Stand-Ups Council. And I think the presumption is is one of the factors that weighs in favor here of sub delegation. Should there be a presumption when you have a Federal Vacancies Reform Act say that Congress, you know, puts limitations on on the executive's abilities to have acting officials based on exclusive functions. So we're supposed to have a presumption that that nothing that officials do do is really exclusive. So your honor, I want to push back on the premise of your question, because what we're arguing is consistent with the way the Federal Vacancy Reform Act defines exclusive functions. And there are statutes and there are regulations in which the Department of the Interior has made clear that Congress or the Department of Interior has made clear that sub delegation is not permissible. The district court quoted five of them in its decision. We provided a number of them in our brief. The government provided some others in their brief. It is not. It is the exception, rather than the rule that something is not delegable. That is the choice that Congress made in the Federal Vacancies Reform Act. That choice applies uniformly to statutes and to regulations. And this court in the Mobley decision, which involved a delegation through an executive order, specifically said sub delegation to a subordinate federal official is presumptively permissible absent affirmative evidence in the original delegation of a contrary attempt. The only thing they've pointed to here that they say is affirmative evidence of a contrary attempt is the mentioning of the assistant secretary. But that's where it matters that there are two paths. There have long been two paths. If you look at the preamble for when this 2013 regulation was promulgated, it explains that the whole point of this is to apply the existing regulations for all ASIA and BIA decisions to trust decisions. And that is spelled out in 25 CFR 2.6. They're taking the same rules that have always been at play for these two paths, one of which is through the Assistant Secretary, Indian Affairs Office. That's a secretarial office. You can see, if you look at the departmental manual org chart, you can see that the principal deputy is the second in command of everything that happens in that office. And then you have a separate path, which is through BIA officials. And the BIA is a separate bureau. It's not run as part of the secretary's office. And then there have always been these two paths. The Department of the Interior's Board of Indian Appeals has interpreted that authority as being delegable, the assistant secretary's authority, in two decisions. That is the Forest County Pottawatomie community decision and the Rama Navajo chapter decision. District courts have tribal nation decision from the District of Connecticut in 2008 and the Sokogon Chippewa community decision from the Western District of Wisconsin in 1996. Judge McFadden looked at all of these things, the longstanding understanding that the Interior has had about what is delegable, that it is consistent with FVRA, that this is like Mango and Ethicon Endo in identifying an these two paths, but not to preclude further delegation. And then you have the departmental manual, which since 2003 has made clear that the principal deputy exercises all of the authority that the assistant secretary has that's delegable. So you have all of these factors pointing in the same direction. You layer on that the Connor Memorandum. You layer on that the two decisions by Mr. Black. There is every indication in this record that it was intended by Interior that this be a final decision, that standup would be able to challenge that final decision in federal court, which they have in fact done, that they did not need to administratively exhaust. And that is really the point here is for parties to know, do we have to administratively exhaust or not? They did not. How far do we have to go? We have to go to the manual, or do we have to go to the Connor decision in order to have, you know, cross all the T's and dot all the I's? Frankly, Your Honor, I think you can go to either. The district court looked to the departmental manual. I think the language is clear in the departmental manual. You can see- Is there an exercise of the power to delegate, or is that just describing the power? In other words, don't we have to point to an exercise of that power, of the power to delegate? So the departmental manual, Your Honor, when you look at it, specifically says that the principal deputy assistant secretary may exercise the authority delegated in 209 departmental manual 8.1. And so I think there is the language that you're looking for, and it is found in the departmental manual. The Connor memorandum, I think, is an alternative way of reaching the same conclusion. As Mr. Toth told you, the Connor memorandum specifically says that it is to confirm that Mr. Roberts had the authority to exercise the functions and duties that FVRA allows to be delegated to him, the non-exclusive duties that the department intended him to have those. That is what he was exercising. And I would note the departmental manual was in place when this regulation was amended in 2013. So I think everyone's understanding from the government, if you look at court decisions, you look at the Board of Indian Appeals, you look at the way the secretary addressed this in the preamble, no one has ever suggested that there is a limitation in this provision on what the assistant secretary can delegate to the principal deputy. In 2005, just to make one more point on this, in 2005, the assistant secretary asked the Department of Interior's solicitor to identify all of the statutes and regulations that were the FVRA duties. Essentially, what could the assistant secretary not delegate? And that memorandum from the solicitor is in the record, and it did not conclude that there was any limitation on the authority in 2.6, which was at the time what set the two different paths. So I think that's yet another factor that the court can look to in understanding that there's nothing in the purpose, the text, the structure of these two paths that intends for only the assistant secretary to perform the act. As the district court noted, that would lead to absurd results. Because one of the things that the assistant secretary is to do is to provide notice, to publish in the federal register a notice of the decision, and to actually acquire the land into trust. And there's no suggestion that really it has to be the assistant secretary who goes out and takes- But that's, I think, a straw man. I mean, delegation is different than just having an agent do something for you. I mean, we issue decisions, and only we are authorized to issue decisions, but we have a clerk's office that does it for us. That doesn't mean that we've delegated any authority to the clerk's office. I mean, the secretary does lots of things, and the secretary has assistants acting as his or her agents to do them. That's right, Your Honor. And the principal deputy assistant secretary is the person identified as the agent who is the second in command, and who, when there is a vacancy, has all of the assistant secretary's authority. So we think that's just further confirmation that here, subdelegation is permissible. The line- But they have the principal deputy has that authority for the time period that Congress says that that person has that authority, right? Well, Your Honor, I think there's an important nuance that maybe we're missing in our dialogue, which is that for 210 days, when someone is in an acting role, they have all of the authority for the exclusive and non-exclusive duties, all of them. They can do everything. Once that 210 days pass, they can no longer do the exclusive duties and functions. So there is a subset of them. The remainder of the authority remains with them. And you've told me that the department's view is that the assistant secretary has no exclusive duties, right? Not a single one. No, that's not true, Your Honor. And I'm sorry if I suggested something to the contrary. The district court gave five examples of those at JA 340. We've provided a couple additional examples in our brief. For example, 43 CFR 3191.2 says certain authority relating to oil and gas leases, quote, shall not be re-delegated. That is a clear example where the presumption of delegability would not apply because the regulation says otherwise. Similarly, 43 CFR 20-202B1 says that certain authority about imposing disciplinary action, quote, may not be re-delegated. This is the kind of language that the solicitor was looking for. And if you look at the solicitor's memo from 2005, which is in the record at JA 286, the solicitor explains how they approach this question about which of the ASIA's delegated authority is further sub-delegable and which is not. I understand that. I guess I didn't state my question or comment properly. Nothing is exclusive unless the agency says it is. That's the position, right? I think the strongest way for it to be clear is when the agency says it is. Giordano shows that there can be instances where the court may need to resort to understanding the purpose in order to reach that conclusion or looking to legislative history to reach that conclusion. But this is not a situation where any of those factors that the Giordano court looked to are applicable. So although express language is one way, and the easiest way for I think there are other ways to overcome the presumption as well, none of them are met here. And again, this is like the Mango and the Ethicon Endo case where the mere naming of an official is not a sufficient basis on its own to show that there is an intent to prohibit that official from sub-delegating, internal sub-delegations. That's the line that this court has consistently drawn. Internal sub-delegations that keep responsibility at the named official are presumptively permissible. When a delegation goes outside of the internal chain of command, that's where this court has said that the delegations are impermissible. For example, in the Shook case from this court back in 1998, there was a situation where the this court said was that was not permissible because it was not this kind of internal keeping accountability and responsibility with the named official. This is not that case. This is a case where the sub-delegation was internal. It was to the second in command. It was consistent with the departmental manual. It was confirmed by the Connor Memorandum. It was further confirmed by Mr. Black in the new administration, agreeing that this was intended to be a final decision, citing the departmental manual to explain why Mr. Roberts had final decision-making authority because he stood in the shoes of the ASIA for this particular action. And then stand-up got their appeal. I mean, really, I think it's important to sort of step back and remember that the point here is to make sure parties have notice of how to appeal. And there's no question here, stand-up got its appeal. It got to bring its NEPA challenge. It got to bring its CRA challenge. And those challenges were resolved by the district court. It got to appeal those challenges to you. So everything that the regulation was designed to do, which is to give notice of how to get judicial review of an action, was met. And so for all of these reasons on this and on the NEPA and the CRA count, we ask that this court affirm the decision below. All right. Thank you. We'll give Ms. McClain two minutes for rebuttal. Thank you, Your Honor. Just a few points. The cases that counsel for Welton Rancheria cite all relate to statutes. And so to the extent that there is any reason to treat them differently, and we believe that there is, including when a regulation is very specific and who is assigned what responsibility and the consequences of those decisions, the analysis in those cases do not control here. I don't understand why the statute would have a presumption, but a regulation wouldn't. I mean, I must say, I think it should be the opposite. With respect to a regulation, there is still a secretary. There is still a deputy secretary. Presumably, if somebody below them acts in a way that they don't want them to act, they can stop them. It's much harder for Congress to do that. So I don't see what the argument even is to suggest that the presumption doesn't apply with respect to internal organization of a department. Well, when a department makes decisions as to the finality of... I understand the finality argument, but the finality argument is, as they say, one about exhaustion. Usually, appellants are up here claiming, this is final. We want to appeal. We don't need to stay in the agency anymore. They're not going to give us what we want. And so the finality question, this is a benefit rather than a burden. And I haven't heard any respect in which you've indicated it was a burden. You discussed for some time the notice question, but I don't see how the lack of notice, if there was one, injured you in any way. You did what you would do if it's final. Well, counsel for the department and for the tribe represented that we had our administrative appeal. An administrative appeal before the IAEA is different from an appeal in court and also involves staying in the transfer. The transfer of land can't occur while that appeal is pending. Okay, but that time has passed. I don't understand. You think you would have gotten a better deal from the Bureau than you would from the, is it the Bureau of the Board? I'm a compute board. Interior Board of Indian Appeals. Yeah, than you would from a court. They can't make a decision that's inconsistent with what the policymakers, from a policy point of view, think. So I don't understand how you would benefit from an internal appeal. And you certainly haven't told us how. I think, well, one of the big issues is it mattered to stand up at that time, because there were state proceedings pending. A California Environmental Quality Act case was pending. And by immediately transferring the land into trust, the citizens no longer had the right to pursue the claims that they had in state court, because the state court lost jurisdiction. So from their perspective, it was important that if a final decision was going to be made, it be made by a PAS officer with the authority to make that decision, so that they could continue their state proceedings while they also proceeded to appeal the NEPA documentation. Is there any indication in the Federal Notice that established this sort of dual approach, that the purpose here is to provide that opportunity, rather than to just provide notice of when something's final? Well, the regulation is very clear that only a few decisions will be handled by an assistant secretary, because those decisions raise significant policy questions and require additional layers of review. The purpose of the regulation wasn't simply to indicate whether a decision was final or not. It also creates other obligations. For example, the immediate transfer of land into trust, which occurred in February, and also requires publication in the Federal Register, which never occurred at all. The Department has never actually published a notice of this decision per the regulations, to the extent there was question of it. You knew of the decision, so I appreciate the general value of a publication. But generally, when somebody makes a complaint that it wasn't published, that's for the question of whether it's final yet, and whether or not they're injured by lack of notice. And both of those are taken care of here. It would be one thing if this was a rule that's going to go on and apply to others, but it's not. It's a decision in an individual case. Well, I do think it's a rule that will apply to others, Your Honor, in the sense that you have a regulation, 25 CFR 2.4, that says any decision by a deputy is non-final and subject to appeal to the IBIA. You have 2.6 that says only decisions by the Assistant Secretary are final. And you have 25 CFR 151-12 that the defendants concede is intended to mirror those appeal regulations, which a court, a district court in California, interpreted as being exclusive. And so there, I think that there is a very real public interest in ensuring that before the department makes a trust decision and immediately acquires land that would precipitate the immediate acquisition of land and trust, it be done by an official that has the authority to do it. And in this case, what the regulations establish is that that person should be a PAS officer, the Assistant Secretary. And it's very clear in the preamble to the rule that only a few decisions are intended to be made by the Assistant Secretary because those decisions are important and all others are intended to go to the IBIA so that the department can ensure that its decision making is consistent and people can get their administrative appeal rights satisfied. So I do think there's a very important interest here. Okay, are there further questions? Thank you. Thank you very much. This was another very good argument today. We appreciate it. Thank you.
judges: Garland, Pillard, Wilkins